UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MUHAMMAD KHAN,<br><br>  Plaintiff,<br><br>  v.<br><br>SAP LABS, LLC,<br><br>  Defendant. | Case No. 18-cv-07490-BLF<br><br>**ORDER GRANTING DEFENDANT SAP LABS, LLC'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Re: ECF 127] |

Plaintiff Muhammad Khan ("Khan") was employed by Defendant SAP Labs, LLC ("SAP"), from 2013 through December 1, 2015, when he parted from the company on bad terms. In January 2016, Khan set fire to the residence of his former SAP manager, Defendant Sanjay Shirole ("Shirole"), while Shirole and his family were asleep inside. Khan was convicted of arson and sentenced to a nine-year term of imprisonment.[1] Khan filed this *pro se* action from prison, asserting employment discrimination and related claims against SAP, Shirole, and other SAP employees. Through motion practice, all of Khan's claims have been dismissed except Claim 1 of the operative second amended complaint ("SAC"), a retaliation claim against SAP under a state whistleblower statute, California Labor Code § 1102.5.

SAP now seeks summary judgment. *See* Def.'s MSJ, ECF 127. Khan has not filed opposition. The Court previously vacated the hearing on the summary judgment motion and took it under submission without oral argument. *See* Order, ECF 138.

For the reasons discussed below, SAP's motion for summary judgment is GRANTED.

---

[1] Khan's arson conviction has been conditionally reversed and his criminal case has been remanded to the state trial court to determine whether he is eligible for mental health pretrial diversion under a statute that took effect after his conviction. *See People v. Khan*, No. H045524, 2020 WL 6042100, at *14 (Cal. Ct. App. Oct. 13, 2020). He remains in custody.

## I. BACKGROUND

Khan joined SAP's Palo Alto office as an intern in July 2013. *See* Scott Decl. ¶ 7, ECF 127-1. In January 2014, Khan joined SAP's Sales Academy training program. *See id.* In mid-2014, Khan joined SAP's HanaHaus team, which was headed up by Shirole, the Vice President and Global Head of HanaHaus. *See id.* HanaHaus is a café and community workspace located in Palo Alto. *See id.*

*Khan's Sick Leave/Medical Leave from June 4, 2015 through October 5, 2015*

On June 4, 2015, Khan went out on sick leave and unpaid medical leave. *See* Scott Decl. ¶ 9. He applied for medical leave under the Family and Medical Leave Act ("FMLA") and the California Family Rights Act ("CFRA"). *See id.* ¶ 8. On September 18, 2015, Khan was approved for a medical leave of absence for the period July 14, 2015 through October 5, 2015 under the FMLA and CFRA. *See id.* Khan was notified of that approval by Human Resources employee Stephanie Scott ("Scott"). *See* Scott Decl. ¶ 8 & Exh. B. Scott has been employed by SAP America, Inc. ("SAP America") in Human Resources since 2010. *See id.* ¶ 2. In that role, Scott is the custodian of records for SAP. *See id.* Scott has access to all SAP employee personnel files, employee time off records, and historical versions of SAP Employee Manuals. *See id.*

Under SAP policy, FMLA/CFRA leave is unpaid. Scott Decl. ¶ 9. However, employees are required to use any paid leave benefits before the unpaid portion of the FMLA/CFRA leave begins. *See id.* Khan's paid leave benefits, including five sick days, two floating holidays/personal days, and nineteen accrued vacation days, were exhausted by August 18, 2015. *See* Scott Decl. ¶ 9 & Exh. C. The remainder of his FMLA/CFRA leave, from August 19, 2015 through October 5, 2015, was unpaid. *See* Scott Decl. ¶ 9.

*Khan's Unpaid Personal Leave from October 6, 2015 through October 16, 2015*

After expiration of Khan's FMLA/CFRA leave on October 5, 2015, SAP approved Khan's request for a personal leave of absence from October 6, 2015 through October 16, 2015, with an expected return to work date of October 19, 2015. *See* Scott Decl. ¶ 10. Khan's personal leave was unpaid, as he already had exhausted all paid leave. *See id.*

*Khan's Complaint to Human Resources Regarding Shirole*

While Khan was out on leave, he began emailing Human Resources employee Jewell Parkinson ("Parkinson") to say that he did not want to return to Shirole's HanaHaus team. *See* Parkinson Decl. ¶¶ 3-8. Parkinson was employed by SAP America from October 1997 through December 2019. *See id.* ¶ 2. From 2014 through December 2015, Parkinson was the Head of the Human Resources Department for North America. *See id.* Khan emailed Parkinson on September 17, 2015, September 25, 2015, October 2, 2015, October 7, 2015, and October 8, 2015, stating that he did not feel comfortable working with Shirole and did not want to return to work for Shirole. *See id.* ¶¶ 4-8 & Exhs. A-E. In one of the emails, Khan stated that his doctor agreed that Khan is unable to work "in the current environment." *Id.* ¶ 5. In another email, Khan stated that Shirole had "consistently abused" him. *Id.* ¶ 8.

*SAP's Investigation of Khan's Complaint and Extension of his Unpaid Personal Leave*

In early October 2015, Human Resources employee Jenny Le ("Le") was assigned to investigate Khan's complaint about Shirole. *See* Le Decl. ¶¶ 2-3, ECF 127-3. Le was employed by SAP America, Inc. from November 2010 through February 2018. *See id.* ¶ 2. She was an Employee Relations Human Resources Business Partner ("Employee Relations HRBP"). *See id.* Her duties included investigating employee complaints, including complaints of discrimination, harassment, and/or retaliation. *See id.*

Le emailed Khan on October 8, 2015, stating that Parkinson had brought her into the loop about Khan's complaint regarding Shirole. *See* Le Decl. ¶ 3. Le and Khan agreed to speak by telephone the following day, October 9, 2015. *See id.* When emailing Khan to confirm that call, Le advised that that "SAP has a zero tolerance policy for retaliation," and that no adverse employment-related consequences would be permitted by SAP for engaging in the investigation process. *See id.* ¶ 4. Le asked that Khan contact her in the event he ever believed he was being retaliated against for participating in the investigation. *See id.*

Le interviewed Khan by telephone on October 9, October 12, and October 14. *See* Le Decl. ¶¶ 5-10. At the first interview, on October 9, Le informed Khan that SAP would allow him to remain on unpaid leave indefinitely through completion of the investigation. *See id.* ¶ 5. Le

3

was not able to complete the interview during those calls, and she attempted to schedule another telephone call with Khan. *See id.* ¶ 10. After some back and forth, Le was able to schedule a call with Khan for October 30, 2015. *See id.* ¶ 11. However, when Le called at the scheduled time, Khan did not pick up. *See id.* Khan failed to respond to Le's follow-up emails for several days, but finally emailed on November 3, 2015 to say he could speak that afternoon. *See id.* ¶ 12. However, Khan again failed to pick up when Le called. *See id.* Le followed up with another email and a voice mail. *See id.* Khan called the following day, November 4, and agreed to speak that afternoon, but he again failed to answer when Le called him. *See id.* ¶ 13. Le finally spoke to Khan again on November 5, 2015, at which time she concluded her interview. *See id.*

Throughout the investigation, Le sent Khan written summaries of their conversations so that he could review them, address any discrepancies, and provide additional information if needed. *See* Le Decl. ¶ 14. Khan had not responded to any of the summaries by November 13, 2015. *See id.* Le advised Khan that he had until November 18, 2015 to respond. *See id.* Khan did not respond to Le's summaries. *See id.* Le emailed Khan on November 23, 2015, informing him that she had not received any response to her email summaries of their conversations. *See id.*

Khan and Le spoke by telephone on Monday, November 30, 2015, after the Thanksgiving holiday. *See* Le Decl. ¶ 15. During the call, they agreed that Khan would return to work on Wednesday, December 2, 2015.[2] *See id.* Le directed Khan to report to Shirole in Building 7 of the Palo Alto campus. *See* Le Decl. ¶ 15 & Exh. L. Khan sent Le an email saying he was leaving SAP. *See* Le Decl. ¶ 15. Khan's email is not included in the record, but based on the allegations of the SAC, it appears the email was sent on December 1, 2015. *See* SAC ¶ 34(a), ECF 63. In any event, Khan did not report for work on December 2, 2015.

*Khan's DFEH Complaint in March 2017*

Khan filed a Complaint of Discrimination against SAP with the Department of Fair Employment and Housing ("DFEH") in March 2017. *See* Def.'s RJN Exh. A, ECF 127-4. At

---

[2] Le's confirmation email states that Khan will return to work on Wednesday, *November* 2, 2015. That clearly was a typographical error, since the email was sent on November 30, 2015. *See* Le Decl. ¶ 15 & Exh. L. December 2, 2015 fell on a Wednesday.

4

SAP's request, the Court takes judicial notice of Khan's DFEH complaint. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record."); *Dornell v. City of San Mateo*, 19 F. Supp. 3d 900, 904 n.3 (N.D. Cal. 2013) (taking judicial notice of public documents including DFEH Complaint and DFEH right-to-sue letter). In his DFEH complaint, Khan alleged that he was terminated on the basis of disability and for taking CFRA leave. *See* RJN Exh. A. He supported that allegation with the following statement, made under penalty of perjury: "From June 1, 2015 to December 1, 2015, my physician placed me on leave due to my disability." *See id.*

*The Present Lawsuit*

Khan filed the present lawsuit from prison on August 21, 2018, approximately one year after his arson conviction and more than two years after separating from SAP. *See* Notice of Removal, ECF 1. His original complaint, which was filed in the Santa Clara County Superior Court, alleged that SAP denied him leave and accommodation in violation of the FMLA and subjected him to a hostile work environment, harassment, discrimination, and retaliation in violation of state law. *See id.* Following removal to federal district court, the parties engaged in vigorous motion practice that resulted in dismissal of all claims and parties except Claim 1 against SAP for whistleblower retaliation under California Labor Code § 1102.5. *See* Order, ECF 80. The Court limited Claim 1 as follows: "the only viable § 1102.5 claim Khan has alleged is a claim that SAP, acting through Le, placed Khan on unpaid leave in retaliation for Khan's protected reporting to Le regarding Shirole's allegedly unlawful conduct." *See id.* at 9. While the Court denied SAP's motion to dismiss that claim under Federal Rule of Civil Procedure 12(b)(6), the Court's ruling was "without prejudice to a motion for summary judgment, if appropriate." *See id.* The Court opined that, "On a more fully developed record, SAP may be able to establish either that Khan voluntarily took unpaid leave or that the imposition of unpaid leave was not in retaliation for protected activity." *Id*.

## II. LEGAL STANDARD

"A party is entitled to summary judgment if the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *City of*

5

1   *Pomona v. SQM North America Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)).  "The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Id.*

"Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." *Oracle*, 627 F.3d at 387.  "[T]he non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.*  "The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor." *City of Pomona*, 750 F.3d at 1049.  "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### III. DISCUSSION

The only claim remaining in Khan's operative SAC is Claim 1 against SAP under California Labor Code § 1102.5.  That claim is limited to the theory that that SAP, acting through Le, placed Khan on unpaid leave in retaliation for Khan's protected reporting to Le regarding Shirole's allegedly unlawful conduct.  *See* Order at 9, ECF 80.

"Section 1102.5 provides whistleblower protections to employees who disclose wrongdoing to authorities." *Lawson v. PPG Architectural Finishes, Inc.*, 12 Cal. 5th 703, 709 (2022).  "As relevant here, section 1102.5 prohibits an employer from retaliating against an employee for sharing information the employee 'has reasonable cause to believe . . . discloses a violation of state or federal statute' or of 'a local, state, or federal rule or regulation' with a government agency, with a person with authority over the employee, or with another employee who has authority to investigate or correct the violation." *Id.* (quoting § 1102.5(b)).  Section 1102.5 "reflects the broad public policy interest in encouraging workplace whistle-blowers to

report unlawful acts without fearing retaliation." *Id*. (internal quotation marks and citation omitted). "An employee injured by prohibited retaliation may file a private suit for damages." *Id*.

The California Supreme Court recently clarified that "[California Labor Code] § 1102.6, and not *McDonnell Douglas*, supplies the applicable framework for litigating and adjudicating section 1102.5 whistleblower claims." *Lawson*, 12 Cal. 5th at 712. Section 1102.6 sets forth a two-part inquiry. *See id*. "First, it places the burden on the plaintiff to establish, by a preponderance of the evidence, that retaliation for an employee's protected activities was a contributing factor in a contested employment action." *Id*. at 718. "Once the plaintiff has made the required showing, the burden shifts to the employer to demonstrate, by clear and convincing evidence, that it would have taken the action in question for legitimate, independent reasons even had the plaintiff not engaged in protected activity." *Id*.

SAP filed its summary judgment motion prior to the California Supreme Court's issuance of *Lawson*. In its motion, SAP expressed uncertainty whether § 1102.5 whistleblower claims should be evaluated under the two-part framework set forth in § 1102.6, or the three-part framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). SAP addressed both legal frameworks in its motion, arguing that it is entitled summary judgment under either *McDonnell Douglas* or § 1102.6. In light of the California Supreme Court's recent clarification in *Lawson*, this Court addresses only the arguments made pursuant to § 1102.6.

SAP argues that Khan cannot meet his burden to establish by a preponderance of the evidence "that retaliation for an employee's protected activities was a contributing factor in a contested employment action." *Lawson*, 12 Cal. 5th at 718. As an initial matter, SAP asserts that Khan's administrative leave does not qualify as an adverse employment action, because Khan himself requested the leave based on the advice of his physician. SAP points to Khan's DFEH complaint filed in March 2017. *See* Def.'s RJN Exh. A, ECF 127-4. In that DFEH complaint, Khan stated under penalty of perjury that, "From June 1, 2015 to December 1, 2015, my physician placed me on leave due to my disability." *See id.* A party's statement, made under oath, is binding on the party at summary judgment. *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1008 (9th Cir. 1998). SAP argues that Khan's sworn statement that it was his own

7

1    physician, and not SAP, who "placed [him] on leave" from June 1, 2015 through December 1,
2    2015, is dispositive of Khan's § 1102.5 claim.  The Court agrees.
3         Although it argues that Khan's sworn admission is dispositive, SAP also points to record
4    evidence showing that at the time Khan first complained to Parkinson about Shirole in September
5    2015, he was already on unpaid leave, and that it was Khan's choice to remain on unpaid leave.
6    Khan went out on leave in June 2015 and exhausted all his paid leave benefits, including sick
7    days, floating holidays/personal days, and vacation days, by August 18, 2015.  *See* Scott Decl. ¶¶
8    8-9 & Exh. C.  Khan was approved for FMLA/CFRA leave for the period July 14, 2015 through
9    October 5, 2015, but because he had exhausted all his paid leave benefits, the FMLA/CFRA leave
10   for the period from August 19, 2015 through October 5, 2015, was unpaid.  *See id*.  When his
11   FMLA/CFRA leave expired, Khan requested and was granted unpaid personal leave for the period
12   October 6, 2015 through October 16, 2015, with an expected return to work date of October 19,
13   2015.  *See* Scott Decl. ¶ 10.  When Khan expressed reluctance to return to work, Le advised him
14   that SAP would allow him to remain on an unpaid leave of absence indefinitely through the
15   conclusion of the Human Resources investigation into his complaint regarding Shirole.  *See* Le
16   Decl. ¶ 5.  Khan's multiple failures to keep telephone appointments with Le, and delays in
17   responding to her telephone calls and emails, caused the investigation to last throughout
18   November.  *See id.* ¶¶ 6-15.  When Le finally completed her investigation, she advised Khan that
19   he was expected to return to work on December 2, 2015.  *See id.* ¶ 15.  Khan did not return to
20   work.  *See id.*
21        On this record, no reasonable trier of fact could find that Khan can establish, by a
22   preponderance of the evidence, that retaliation for his complaint about Shirole was a "contributing
23   factor" in his placement on unpaid leave.  The undisputed evidence establishes that Khan
24   requested and was granted unpaid leave on the advice of his physician *before* complaining to
25   Human Resources about Shirole, and Khan chose to stay on unpaid leave through the course of the
26   Human Resources investigation.  The evidence is not susceptible of any other reasonable
27   inference.  Accordingly, SAP has established that it is entitled to summary judgment at part one of
28   the § 1102.6 inquiry.  The Court therefore need not address part two of the § 1102.6 inquiry.

8

**IV.   ORDER**

  (1) SAP's motion for summary judgment is granted.

  (2) This order terminates ECF 127.

  (3) A separate judgment will be entered simultaneously with this order.

Dated:  May 20, 2022

_____
BETH LABSON FREEMAN
United States District Judge