UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MUHAMMAD KHAN,<br><br>    Plaintiff,<br><br>    v.<br><br>SAP LABS, LLC, et al.,<br><br>    Defendants. | Case No. 18-cv-07490-BLF<br><br>**ORDER GRANTING DEFENDANT SAP LABS, LLC'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Re: ECF 127] |

The Court considers for a second time the motion for summary judgment filed by Defendant SAP Labs, LLC ("SAP") in this employment action brought by Plaintiff Muhammad Khan ("Khan"), who is incarcerated and proceeding *pro se*. Khan was sentenced to a nine-year prison term for arson following a jury's determination that he set fire to the residence of his former SAP manager, Sanjay Shirole ("Shirole"), while Shirole and his family were asleep inside.[1] Khan did not file timely opposition to SAP's motion, despite several extensions of his deadline to do so. On May 20, 2022, the Court granted SAP's then-unopposed summary judgment motion and entered judgment for SAP and other defendants who were previously dismissed from the case.

On June 15, 2022, Khan filed untimely opposition to SAP's summary judgment motion. Given Plaintiff's status as a *pro se* litigant who is incarcerated, the Court vacated its summary judgment ruling and the judgment, and accepted the late opposition. Briefing on the motion has been completed and the Court finds the motion suitable for decision without a hearing. *See* Civil L.R. 7-1(b). The motion is GRANTED for the reasons discussed below.

---

[1] Khan's arson conviction has been conditionally reversed and his criminal case has been remanded to the state trial court to determine whether he is eligible for mental health pretrial diversion under a statute that took effect after his conviction. *See People v. Khan*, No. H045524, 2020 WL 6042100, at *14 (Cal. Ct. App. Oct. 13, 2020). He remains in custody.

## I. BACKGROUND

Khan joined SAP's Palo Alto office as an intern in July 2013. *See* Scott Decl. ¶ 7, ECF 127-1. In January 2014, Khan joined SAP's Sales Academy training program. *See id.* In mid-2014, Khan joined SAP's HanaHaus team, which was headed up by Shirole, the Vice President and Global Head of HanaHaus. *See id.* HanaHaus is a café and community workspace located in Palo Alto. *See id.*

*Khan's Sick Leave/Medical Leave from June 4, 2015 through October 5, 2015*

On June 4, 2015, Khan went out on sick leave and unpaid medical leave. *See* Scott Decl. ¶ 9. He applied for medical leave under the Family and Medical Leave Act ("FMLA") and the California Family Rights Act ("CFRA"). *See id.* ¶ 8 & Exh. B. Based on a note from his doctor, Khan was approved for a medical leave of absence under the FMLA and CFRA for the period July 14, 2015 through October 5, 2015. *See id.* ¶ 8 & Exh. B. Khan was notified of that approval by Human Resources employee Stephanie Scott ("Scott"). *See id.* ¶ 8 & Exh. B. Scott has been employed by SAP America, Inc. ("SAP America") in Human Resources since 2010. *See id.* ¶ 2. In that role, Scott is the custodian of records for SAP. *See id.* Scott has access to all SAP employee personnel files, employee time off records, and historical versions of SAP Employee Manuals. *See id.*

Under SAP policy, FMLA/CFRA leave is unpaid. Scott Decl. ¶ 9. However, employees are required to use any paid leave benefits before the unpaid portion of the FMLA/CFRA leave begins. *See id.* Khan's paid leave benefits, including five sick days, two floating holidays/personal days, and nineteen accrued vacation days, were exhausted by August 18, 2015. *See* Scott Decl. ¶ 9 & Exh. C. The remainder of Khan's FMLA/CFRA leave, from August 19, 2015 through October 5, 2015, was unpaid. *See* Scott Decl. ¶ 9.

*Khan's Unpaid Personal Leave from October 6, 2015 through October 16, 2015*

After expiration of Khan's FMLA/CFRA leave on October 5, 2015, SAP approved Khan's request for a personal leave of absence from October 6, 2015 through October 16, 2015, with an expected return to work date of October 19, 2015. *See* Scott Decl. ¶ 10. Khan's personal leave was unpaid, as he already had exhausted all paid leave. *See id.*

2

*Khan's Complaint to Human Resources Regarding Shirole*

While out FMLA leave, Khan began emailing Human Resources employee Jewell Parkinson ("Parkinson") to say that he did not want to return to Shirole's HanaHaus team. *See* Parkinson Decl. ¶¶ 3-8 & Exh. A, ECF 127-2. Parkinson was employed by SAP America from October 1997 through December 2019. *See id.* ¶ 2. From 2014 through December 2015, Parkinson was the Head of the Human Resources Department for North America. *See id.* Khan emailed Parkinson on September 17, 2015, September 25, 2015, October 2, 2015, October 7, 2015, and October 8, 2015, stating that he did not feel comfortable working with Shirole and did not want to return to work for Shirole. *See id.* ¶¶ 4-8 & Exhs. A-E. In one of the emails, Khan stated that his doctor agreed that Khan is unable to work "in the current environment." *Id.* ¶ 5. In another email, Khan stated that Shirole had "consistently abused" him. *Id.* ¶ 8.

*SAP's Investigation of Khan's Complaint and Extension of his Unpaid Personal Leave*

In early October 2015, Human Resources employee Jenny Le ("Le") was assigned to investigate Khan's reporting about Shirole. *See* Le Decl. ¶¶ 2-3, ECF 127-3. Le was employed by SAP America, Inc. from November 2010 through February 2018. *See id.* ¶ 2. She was an Employee Relations Human Resources Business Partner ("Employee Relations HRBP"). *See id.* Her duties included investigating employee complaints, including complaints of discrimination, harassment, and/or retaliation. *See id.*

Le emailed Khan on October 8, 2015, stating that Parkinson had brought her into the loop about Khan's complaint regarding Shirole. *See* Le Decl. ¶ 3. Le and Khan agreed to speak by telephone the following day, October 9, 2015. *See id.* When emailing Khan to confirm that call, Le advised that that "SAP has a zero tolerance policy for retaliation," and that no adverse employment-related consequences would be permitted by SAP for engaging in the investigation process. *See id.* ¶ 4. Le asked that Khan contact her in the event he ever believed he was being retaliated against for participating in the investigation. *See id.*

Le interviewed Khan by telephone on October 9, October 12, and October 14. *See* Le Decl. ¶¶ 5-10. At the first interview, on October 9, Le informed Khan that SAP would allow him to remain on unpaid leave indefinitely through completion of the investigation. *See id.* ¶ 5. Le

3

1   was not able to complete the interview during those calls, and she attempted to schedule another
2   telephone call with Khan. *See id.* ¶ 10. After some back and forth, Le was able to schedule a call
3   with Khan for October 30, 2015. *See id.* ¶ 11. However, when Le called at the scheduled time,
4   Khan did not pick up. *See id.* Khan failed to respond to Le's follow-up emails for several days,
5   but finally emailed on November 3, 2015 to say he could speak that afternoon. *See id.* ¶ 12.
6   However, Khan again failed to pick up when Le called. *See id.* Le followed up with another
7   email and a voice mail. *See id.* Khan called the following day, November 4, and agreed to speak
8   that afternoon, but he again failed to answer when Le called him. *See id.* ¶ 13. Le finally spoke to
9   Khan again on November 5, 2015, at which time she concluded her interview. *See id.*

10  Throughout the investigation, Le sent Khan written summaries of their conversations so
11  that he could review them, address any discrepancies, and provide additional information if
12  needed. *See* Le Decl. ¶ 14. Khan had not responded to any of the summaries by November 13,
13  2015. *See id.* Le advised Khan that he had until November 18, 2015 to respond. *See id.* Khan
14  did not respond to Le's summaries. *See id.* Le emailed Khan on November 23, 2015, informing
15  him that she had not received any response to her email summaries of their conversations. *See id.*

16  Khan and Le spoke by telephone on Monday, November 30, 2015, after the Thanksgiving
17  holiday. *See* Le Decl. ¶ 15. During the call, they agreed that Khan would return to work on
18  Wednesday, December 2, 2015.[2] *See id.* Le directed Khan to report to Shirole in Building 7 of
19  the Palo Alto campus. *See* Le Decl. ¶ 15 & Exh. L. However, the next day Le sent Khan an email
20  stating, "Based on concerns SAP has with your recent conduct and behavior, SAP has made the
21  decision to terminate your employment effective today, Tuesday, December 1, 2015." Johnsrud
22  Decl. Exh. A, ECF 170-1. Also on December 1, 2015, Khan sent out an "open letter" via an email
23  with the following in the subject line: "An open letter on why I'm leaving HanaHaus and my
24  manager Sanjay." *Id*. The open letter is directed to "Sanjay et al." and it is not clear to whom it
25  was distributed. *Id*. The open letter contains twenty enumerated paragraphs criticizing Khan's

---

[2] Le's confirmation email states that Khan will return to work on Wednesday, *November* 2, 2015. That clearly was a typographical error, since the email was sent on November 30, 2015. *See* Le Decl. ¶ 15 & Exh. L. December 2, 2015 fell on a Wednesday.

4

former manager, Sanjay Shirole. *See id.* Khan's open letter concludes with the following post script: "PS – To others who may have issues with Sanjay, if there's something you don't like, speak up and report it to HR. Else, he'll continue to disrupt employees." *Id*.

The current record contains no explanation for SAP's sudden about-face between November 30, 2015, when Le directed Khan to return to work, and December 1, 2015, when Le advised Khan that his employment was terminated. It may be that the decision was related to an incident at HanaHaus described by the California Court of Appeal in an opinion addressing Khan's criminal arson case. *See People v. Khan*, No. H045524, 2020 WL 6042100 (Cal. Ct. App. Oct. 13, 2020). On November 30, 2015, Shirole reviewed security camera footage of a break-in at HanaHaus that occurred at approximately 2:00 a.m. on November 26, 2015. *See id.* at *3. The footage showed an individual entering HanaHaus from the back parking lot, hunching down, and subsequently performing a movement like a hop or a skip. *See id.* It was determined that the individual had thrown cockroaches into HanaHaus. *See id.* On November 30, 2015, Shirole identified the individual as Khan and informed SAP's Human Resources department of the incident. *See id.* The following day, on December 1, 2015, Le sent her email terminating Khan and Khan issued his open letter resigning from SAP.

*Khan's DFEH Complaint in March 2017*

More than a year later, in March 2017, Khan filed an administrative complaint against SAP with the Department of Fair Employment and Housing ("DFEH"). *See* Def.'s RJN Exh. A, ECF 127-4. SAP requests that the Court take judicial notice of Khan's DFEH complaint. *See id.* Khan argues that the DFEH complaint is inadmissible. For reasons discussed in detail below, the Court resolves this evidentiary dispute in SAP's favor and does take judicial notice of Khan's DFEH complaint. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record."); *Dornell v. City of San Mateo*, 19 F. Supp. 3d 900, 904 n.3 (N.D. Cal. 2013) (taking judicial notice of public documents including DFEH Complaint and DFEH right-to-sue letter). In his DFEH complaint, Khan alleged that SAP discriminated against him and terminated him due to an unspecified disability and due to his taking CFRA leave. *See* RJN Exh. A. He supported that allegation with

the following statement, made under penalty of perjury: "From June 1, 2015 to December 1, 2015, my physician placed me on leave due to my disability." *See id.* The parties dispute the significance of this statement with respect to SAP's current motion for summary judgment, as discussed below.

*The Present Lawsuit*

Khan filed the present lawsuit from prison on August 21, 2018, approximately one year after his arson conviction and two and a half years after separating from SAP. *See* Notice of Removal, ECF 1. His original complaint, which was filed in the Santa Clara County Superior Court, alleged that SAP denied him leave and accommodation in violation of the FMLA and subjected him to a hostile work environment, harassment, discrimination, and retaliation in violation of state law. *See id.* The complaint named as defendants SAP and HR employees Le and Parkinson. *See id.*

Following removal to federal district court, the Court granted Khan's motion for leave to file a first amended complaint ("FAC"). The FAC dropped Parkinson as a defendant and added Shirole, such that the FAC asserted claims against SAP, Shirole, and Le. *See* FAC, ECF 59. Following motion practice, and consistent with the Court's order dismissing Shirole and Le, Khan filed the operative second amended complaint ("SAC") against SAP only. *See* SAC, ECF 63. The SAC is verified and therefore is treated like an affidavit for purposes of SAP's motion.[3] *See* Khan Decl., ECF 63-2.

Further motion practice resulted in dismissal of nearly all claims of the SAC, leaving only Claim 1 against SAP for whistleblower retaliation under California Labor Code § 1102.5. *See* Order, ECF 80. Section 1102.5 prohibits retaliation for certain protected activity, such as disclosure of illegal conduct to a government agency or to internal company personnel with authority to investigate. *See* Cal. Lab. Code § 1102.5(b). In the SAC, Khan alleges that he engaged in protected activity by reporting Shirole's discriminatory and harassing conduct to

---

[3] "A verified complaint may be treated as an affidavit to oppose summary judgment to the extent it is based on personal knowledge and sets forth specific facts admissible in evidence." *Keenan v. Hall*, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996) (internal quotation marks and citation omitted).

6

appropriate SAP personnel, and that SAP retaliated against him by subjecting him to numerous adverse employment actions, including but not limited to placing him on unpaid leave and constructively discharging him. SAC ¶¶ 57.c, 57.d. The Court determined that the SAC alleges facts giving rise to a reasonable inference of a causal link between Khan's protected reporting and SAP's decision to place him on unpaid leave. *See* Order at 9, ECF 80. However, the Court determined that the SAC does not allege facts suggesting a causal link between his protected reporting activity and any other alleged adverse employment action. *See id*. at 8-9. Importantly, the Court concluded that the SAC does not allege facts suggesting that Shirole's alleged discriminatory and harassing conduct was *in retaliation for* Khan's protected reporting activity. *See id.* Accordingly, even if Shirole's conduct made the workplace so intolerable for Khan as to effect a constructive discharge, Shirole's conduct does not give rise to a claim under the particular statute at issue here, § 1102.5.[4]

The Court therefore denied SAP's motion to dismiss Claim 1 for whistleblower retaliation under § 1102.5, but limited Claim 1 as follows: "the only viable § 1102.5 claim Khan has alleged is a claim that SAP, acting through Le, placed Khan on unpaid leave in retaliation for Khan's protected reporting to Le regarding Shirole's allegedly unlawful conduct." *Id.* at 9. While the Court declined to dismiss Claim 1, the Court's ruling was "without prejudice to a motion for summary judgment, if appropriate." *See id.* The Court opined that, "On a more fully developed record, SAP may be able to establish either that Khan voluntarily took unpaid leave or that the imposition of unpaid leave was not in retaliation for protected activity." *Id*.

*SAP's Motion for Summary Judgment*

SAP filed its motion for summary judgment on January 14, 2022. *See* Def.'s MSJ, ECF 127. The Court extended Khan's deadline to respond three times: from January 28, 2022 to February 18, 2022, then to March 16, 2022, and yet again to April 6, 2022. *See* Order Granting Third and Final Extension, ECF 141. Khan did not file opposition by the third extended deadline,

---

[4] The type of discriminatory and harassing conduct attributed to Shirole in the SAC generally may be redressed through claims brought under California's Fair Employment and Housing Act ("FEHA"). Khan did assert several FEHA claims in this suit, but those claims were dismissed for failure to exhaust administrative remedies and/or as time-barred. *See* Order at 14-21, ECF 58.

7

and the Court thereafter denied Khan's requests for additional extensions. The Court issued an order granting SAP's motion for summary judgment on May 20, 2022 and entered judgment on the same date. *See* Prior MSJ Order, ECF 158; Judgment ECF 159.

On June 15, 2022, Khan filed an untimely opposition to SAP's summary judgment motion. *See* Pl.'s Opp., ECF 161, 162, 163. Given Plaintiff's status as a *pro se* litigant who is incarcerated, the Court vacated its summary judgment ruling and the judgment, directed the Clerk to reopen the case, accepted Khan's late-filed opposition, and directed SAP to file a reply. *See* Order, ECF 164. The Court stated that upon the filing of SAP's reply, the Court would take the summary judgment motion under submission without oral argument. *See id.* SAP filed its reply on June 30, 2022. *See* Def.'s Reply, ECF 170. Khan filed additional unauthorized briefing on July 18, 2022 and July 22, 2022, which the Court has considered. *See* Pl.'s Suppl. Reply, ECF 171, 172, 173.

On August 10, 2022, Khan filed a "Preemptive Notice of Appeal" of this Court's future ruling on SAP's summary judgment motion. *See* Not., ECF 174. The Ninth Circuit dismissed that appeal for lack of jurisdiction on August 19, 2022. *See* USCS Order, ECF 177.

## II. LEGAL STANDARD

"A party is entitled to summary judgment if the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *City of Pomona v. SQM North America Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). "The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Id*.

"Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." *Oracle*, 627 F.3d at 387. "[T]he non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* "The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the

1  nonmovant's favor." *City of Pomona*, 750 F.3d at 1049. "Where the record taken as a whole
2  could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for
3  trial." *Id*. (internal quotation marks and citation omitted).

**III.  DISCUSSION**

SAP moves for summary judgment on the only claim remaining in Khan's operative SAC, Claim 1 under California Labor Code § 1102.5. The Court has limited that claim to the theory that that SAP, acting through Le, placed Khan on unpaid leave in retaliation for Khan's protected reporting to Le regarding Shirole's allegedly unlawful conduct. *See* Order at 9, ECF 80.

**A.  Framework for Analyzing § 1102.5 Claim**

"Section 1102.5 provides whistleblower protections to employees who disclose wrongdoing to authorities." *Lawson v. PPG Architectural Finishes, Inc.*, 12 Cal. 5th 703, 709 (2022). "As relevant here, section 1102.5 prohibits an employer from retaliating against an employee for sharing information the employee 'has reasonable cause to believe . . . discloses a violation of state or federal statute' or of 'a local, state, or federal rule or regulation' with a government agency, with a person with authority over the employee, or with another employee who has authority to investigate or correct the violation." *Id*. (quoting § 1102.5(b)). Section 1102.5 "reflects the broad public policy interest in encouraging workplace whistle-blowers to report unlawful acts without fearing retaliation." *Id*. (internal quotation marks and citation omitted). "An employee injured by prohibited retaliation may file a private suit for damages." *Id*.

The California Supreme Court recently clarified that "[California Labor Code] § 1102.6, and not *McDonnell Douglas*, supplies the applicable framework for litigating and adjudicating section 1102.5 whistleblower claims." *Lawson*, 12 Cal. 5th at 712. Section 1102.6 sets forth a two-step framework. *See id*. "First, it places the burden on the plaintiff to establish, by a preponderance of the evidence, that retaliation for an employee's protected activities was a contributing factor in a contested employment action." *Id*. at 718. "Once the plaintiff has made the required showing, the burden shifts to the employer to demonstrate, by clear and convincing evidence, that it would have taken the action in question for legitimate, independent reasons even had the plaintiff not engaged in protected activity." *Id*.

9

1    SAP argues that it is entitled to summary judgment at both steps of the two-step framework
2    under § 1102.6.⁵  Khan argues that disputed facts preclude summary judgment.

### B.     Step One of § 1102.6 Framework

At step one, Khan bears the burden of proof at trial to show by a preponderance of the evidence that retaliation for his protected reporting to Le was a contributing factor in SAP's placing Khan on unpaid leave. Where, as here, "the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387.

#### 1.     SAP's Evidence

SAP argues that the record is devoid of evidence that retaliation for Khan's protected reporting was a contributing factor in SAP's decision to place Khan on unpaid leave. To the contrary, SAP argues, Khan's own party admission establishes that it was his physician and not SAP who made the determination that Khan should be placed on leave. SAP points to Khan's March 2017 complaint filed with California's Department of Fair Employment and Housing ("DFEH"). *See* Def.'s RJN Exh. A, ECF 127-4. In that DFEH complaint, Khan stated under penalty of perjury that, "From June 1, 2015 to December 1, 2015, my physician placed me on leave due to my disability." *Id.* SAP argues that Khan's sworn statement that his own physician placed him on leave due to disability, for a period extending through Khan's separation from SAP, is dispositive of his claim that he was placed on unpaid leave in retaliation for reporting about Shirole. Khan's statement is admissible as an opposing party statement and may be considered on summary judgment. *See* Fed. R. Evid. 801(d)(2)(A) (excluding opposing party statements from the definition of hearsay); Fed. R. Civ. P. 56(c)(1)(A) (a party's admissions may be considered on summary judgment).

---

⁵ SAP filed its summary judgment motion prior to the California Supreme Court's issuance of *Lawson*. In its motion, SAP expressed uncertainty whether § 1102.5 whistleblower claims should be evaluated under the two-step framework set forth in § 1102.6, or the three-step framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). SAP addressed both legal frameworks in its motion, arguing that it is entitled summary judgment under either *McDonnell Douglas* or § 1102.6. In light of the California Supreme Court's recent clarification in *Lawson*, this Court addresses only the arguments made pursuant to § 1102.6.

10

SAP also argues that Khan could not have been placed on unpaid leave in retaliation for complaining about Shirole, because Khan was already on unpaid leave when he made the complaints in question. Khan applied for FMLA/CFRA leave and was approved for the period July 14, 2015 through October 5, 2015. *See* Scott Decl. ¶¶ 8-9 & Exh. C. The period August 19, 2015 through October 5, 2015, was unpaid because Khan had exhausted all his paid leave benefits. *See id.* When his FMLA/CFRA leave expired, Khan requested and was granted unpaid personal leave for the period October 6, 2015 through October 16, 2015. *See* Scott Decl. ¶ 10. During those unpaid leave periods, Khan began emailing Parkinson about Shirole, the matter was assigned to Le, and Le began her investigation. *See* Parkinson Decl. ¶¶ 3-8 & Exhs. A-E; Le Decl. ¶ 3.

Finally, SAP argues that there is no evidence that Le extended Khan's unpaid leave in retaliation for his reporting activity. Khan stated in emails to Parkinson that he did not want to return to work under Shirole, and that his doctor had determined that Khan was unable to work in his current environment. *See* Parkinson Decl. ¶¶ 3-8. In her first interview with Khan on October 9, 2015, Le stated that Parkinson had made her aware of Khan's concerns regarding Shirole and that SAP would allow Khan to extend his unpaid leave through the conclusion of the investigation. *See* Le Decl. ¶ 5. At that time, Le expected that the investigation would be completed quickly. *See id.* However, due to Khan's failure to respond to emails and failure to keep appointments to speak with Le, the investigation dragged into late November. *See id.* ¶¶ 9-15.

The Court finds it extremely odd that SAP's evidence does not include documentation showing that Le spoke to anyone besides Khan, for example, to Shirole. Also glaringly absent from SAP's evidence is the result of Le's investigation into Shirole's reportedly discriminatory and abusive conduct toward Khan. While the Court would have appreciated a more complete record from SAP, however, the Court concludes that SAP has met its initial burden to show that no reasonable jury could find by a preponderance of the evidence that retaliation for Khan's protected reporting was a contributing factor in SAP's decision to place Khan on unpaid leave.

### 2. Khan's Evidence

The burden thus shifts to Khan "to designate specific facts demonstrating the existence of genuine issues for trial." *Oracle*, 627 F.3d at 387. More specifically, Khan must present evidence

from which a reasonable jury could find by a preponderance of the evidence that Khan's protected reporting to Le was a contributing factor in SAP's decision to place Khan on unpaid leave. *See id.* ("[T]he non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor."). Khan presents scattershot argument and evidence, much of which is not relevant to this limited issue. The Court addresses the potentially relevant arguments below.

### a. Khan's Sworn Statement in his DFEH Complaint

As noted above, Khan filed an administrative complaint with the DFEH in March 2017, asserting that SAP discriminated against him and terminated him due to an unspecified disability and due to his taking CFRA leave. *See* Def.'s RJN Exh. A, ECF 127-4. The administrative complaint is quite short, comprising three numbered paragraphs and a verification. *See id.* Paragraph 3 of the DFEH complaint states that " "From June 1, 2015 to December 1, 2015, my physician placed me on leave due to my disability." *Id.* The verification states as follows:

> I, Muhammad Khan, am the Complainant in the above complaint. I have read the above complaint and know its contents. I declare under penalty of perjury under the laws of the State of California that the above is true and correct of my own knowledge, except as to those matters alleged on information and belief, which I also believe to be true.

*Id.* The DFEH complaint is signed by Khan and dated March 5, 2017. *Id.*

Khan argues that the Court cannot consider the statement that his physician "placed [him] on leave," because the DFEH complaint must be construed liberally in his favor. Khan cites *Nazir v. United Airlines, Inc.*, 178 Cal. App. 4th 243, 268 (2009), which holds that "what is submitted to the DFEH must not only be construed liberally in favor of plaintiff, it must be construed in light of what might be uncovered by a reasonable investigation." Khan's reliance on *Nazir* is misplaced, as the quoted language addresses the administrative exhaustion requirement for claims brought under California's Fair Employment and Housing Act ("FEHA"). It does not speak to the admissibility of an opposing party statement in an administrative complaint.

Khan next argues that his DFEH complaint is inadmissible because his FEHA claims have been dismissed and his remaining California Labor Code § 1102.5 claim does not have an administrative exhaustion requirement. According to Khan, these circumstances render his DFEH

12

complaint void. Khan cites no authority in support of his voidness argument and the Court has discovered none. Based on the Court's review of applicable authority, it appears that Khan's sworn statement in his DFEH complaint is admissible as a statement of an opposing party. *See* Fed. R. Evid. 801(d)(2)(A); *see also Lockwood v. Wolf Corp.*, 629 F.2d 603, 611 (9th Cir. 1980) (holding that admissions in the opposing party's pleadings are admissible evidence under Federal Rule of Evidence 801(d)(2) and thus can serve as the basis for summary judgment.).

Khan contends that the statement is hearsay, and that SAP has not provided verified medical evidence, declarations of AETNA employees, and the like. The statement is not hearsay because it is an opposing party statement. *See* Fed. R. Evid. 801(d)(2)(A). The cases cited by Khan in support of his assertion that SAP should have provided medical evidence are factually distinguishable and do not apply here.

SAP's reply argues these and other weaknesses in Khan's challenge to the admissibility of the party admission contained in his DFEH complaint. Perhaps realizing that SAP has the better of those arguments, Khan filed an unauthorized "Supplemental Reply" (hereinafter "sur-reply") which has been considered by the Court. In his sur-reply, Khan states that he does not know how the statement at issue – that his physician placed him on leave from June 2015 through December 2015 – got into his DFEH complaint, and he denies making that statement. Khan speculates that SAP somehow is responsible for the inclusion of the statement in his DFEH complaint, although he does not explain how SAP could have inserted language into a document Khan submitted to the DFEH. Khan submits a supplemental declaration with his sur-reply, stating that he "was not put on leave by any physician from June 2015 through December 2015." Pl.'s Suppl. Decl. ¶ 2, ECF 172.

Under established Ninth Circuit authority, "[a] party cannot create a triable issue of fact, and thus survive summary judgment, merely by contradicting his or her own sworn deposition testimony with a later declaration." *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1008 (9th Cir. 1998). In *Disc Golf*, the Ninth Circuit extended that rule, finding that a declaration filed in opposition to summary judgment could not create a material issue of fact merely by contradicting prior sworn statements in the patent application. *See id.* Applying that reasoning

13

here, this Court finds that Khan's supplemental declaration does not create an issue of fact as to whether Khan's physician placed him on leave.

The Court notes that even without considering Khan's DFEH complaint, the other evidence submitted by SAP is sufficient to meet SAP's initial burden. That evidence includes the declarations of Scott, Parkinson, and Le, and the exhibits attached thereto, as discussed above.

### b. Separate Statement of Undisputed Facts

Khan contends that SAP's motion is subject to denial for failure to submit a separate statement of undisputed facts as required under California Civil Procedure Code § 437c(b). That requirement does not apply in federal court and, this district's Civil Local Rules expressly prohibit the filing of a separate statement of undisputed facts with a summary judgment motion unless specifically required by the assigned judge. *See* Civ. L.R. 56-2(a). Accordingly, SAP's lack of a separate statement is not a basis to deny its motion.

### c. Declarations of Scott and Parkinson

Khan objects to the declarations of Stephanie Scott and Jewell Parkinson on the basis that they are not sworn under the laws of the state of California. In federal court, declarations executed within the United States must state only the following: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)." 28 U.S.C.A. § 1746. The declarations of Scott and Parkinson meet these requirements and therefore are admissible. *See* Scott Decl., ECF 127-1; Jewell Decl., ECF 127-2.

### d. Reporting to Other SAP Employees

Khan contends that SAP focuses only on Khan's reporting to Le while ignoring his reporting to other HR employees, including Heilee Rees, Denis Brown, and Prasad Tadimeti. The Court's prior order granting in part SAP's motion to dismiss the SAC addressed Khan's allegations that he reported Shirole's conduct to multiple SAP employees. *See* Order at 8-9, ECF 80. The Court determined that Khan had not alleged a causal link between the reporting to other SAP employees, including Prasad, Parkinson, and Priya, and the alleged adverse employment actions. *See id.* The Court found that Khan had alleged a causal link only between his reporting to Le and the alleged adverse action of putting him on unpaid leave. *See id.* at 9. The Court

14

therefore expressly limited Khan's claim as follows: "the only viable § 1102.5 claim Khan has alleged is a claim that SAP, acting through Le, placed Khan on unpaid leave in *retaliation for Khan's protected reporting to Le* regarding Shirole's allegedly unlawful conduct." *Id.* at 9 (emphasis added). SAP thus properly focuses on Khan's reporting to Le.

Moreover, Khan's evidence regarding his reporting to other SAP employees does not create a dispute as to any material fact. SAP has submitted unrefuted evidence that Khan was granted unpaid leave through October 16, 2015 at his own request. Thus, the only period of leave potentially in question is the period from October 17, 2017 through December 1, 2015, during which Khan's unpaid leave was extended by Le in conjunction with her investigation. Khan has not presented any evidence that his communications with other SAP employees impacted Le's decision to extend Khan's unpaid leave during her investigation.

### e. Khan's Request for Unpaid Leave

Khan contends that SAP has not submitted any written leave requests made by him. SAP has submitted email correspondence between SAP employees and Khan discussing approval of *his* FMLA request. *See* Scott Decl. Exh. B; Parkinson Decl. Exh. A. SAP also has submitted Scott's declaration explaining how Khan's leave benefits were used, the circumstances of Khan's approval for FMLA/CFRA, and the circumstances of Khan's request and approval for unpaid personal leave following expiration of his FMLA/CFRA leave. *See* Scott Decl. ¶¶ 8-10. Le began her investigation during the latter unpaid personal leave. *See* Le Decl. ¶ 3, ECF 127-3. Khan does not dispute these facts through a declaration or other evidence.

### f. Extension of Unpaid Leave During Le's Investigation

Once Le began investigating, she advised Khan that his unpaid leave would be extended through the conclusion of the investigation. *See* Le Decl. ¶ 5. Khan asserts that he asked to return to work during Le's investigation and that she denied his request in retaliation for his reporting. The evidence cited by Khan does not suggest either that Khan actually asked to return to work or that Le denied such a request for retaliatory reasons. Khan directs the Court to a November 5, 2015 email from Le summarizing her interviews with Khan. *See* Khan Decl. Exh. C, ECF 162. Le noted among other things that Khan had asked what would happen if he were to drop his

1    complaints about Shirole, and that she had told him the investigation would continue because SAP
2    takes the complaints seriously. *See id*. The email does not reflect that Khan actually asked to
3    return to work during Le's investigation. *See id.* Even assuming that Khan did make such a
4    request, there is no evidence that Le denied that request for retaliatory reasons. When Scott sent
5    Le an email inquiry whether Khan should be kept out on unpaid leave through November 15,
6    2015, Le responded in the affirmative, stating:

> Due to our schedules, Hassan and I have not completed our interview phase yet. I am speaking with him tomorrow to finalize his portion of the investigation and then can move on to speaking with his managers and others as needed. I hope those interviews will go much more quickly.

Khan Decl. Exh. D, ECF 162. This email indicates that Le believed it was appropriate to keep Khan out on unpaid leave pending completion of her investigation. It is unclear whether that was SAP policy or whether there was some other reason for Le's belief, but nothing in this email or any other evidence proffered by Khan would support a jury finding that Le kept Khan out on unpaid leave in retaliation for his protected reporting.

### g. Termination and Post-Termination Conduct

Khan argues that SAP focuses only on his claim that he was placed on unpaid leave and ignores his claim that SAP terminated him in retaliation for complaining about Shirole. Khan's termination is not encompassed within the scope of his remaining claim as limited by the Court. *See* Order at 9, ECF 80. To the extent Khan is referencing his alleged constructive discharge due to Shirole's conduct, the Court concluded in its prior order that the SAC does not allege facts suggesting that Shirole's alleged discriminatory and harassing conduct was *in retaliation for* Khan's protected reporting activity. *See* Order at 8-9, ECF 80. To the extent Khan asserts that Le's termination email dated December 1, 2015 was retaliatory, that email was not previously before the Court and was not expressly addressed in its prior dismissal order. However, Khan does not identify any evidence suggesting that Le's termination email was in retaliation for Khan's protected reporting. Up until November 30, 2015, SAP clearly intended to have Khan return to work, as reflected by Le's email of that date directing Khan to report on December 2, 2015.

SAP may have changed its mind based on Shirole's November 30, 2015 identification of

16

Khan as the individual who threw cockroaches into HanaHaus. Terminating Khan for that reason would not give rise to a claim of whistleblower retaliation under § 1102.5. The Court observes that Khan himself did not appear to believe that his termination was retaliatory at the time, as his open letter dated December 1, 2015 contains no mention of a retaliatory animus. To the contrary, that open letter encourages Khan's former colleagues at SAP to report any concerns about Shirole to SAP's Human Resources department.

Khan argues that SAP took adverse actions after his termination, including replacing him with a white individual and aiding in his criminal prosecution. That alleged conduct also is outside the scope of his claim. *See id.*

Having considered all of Khan's arguments and evidence, the Court finds that Khan has failed to identify disputed facts that would preclude granting summary judgment for SAP. No reasonable jury considering this record could find by a preponderance of the evidence that Khan's protected reporting about Shirole was a contributing factor in SAP's decision to place Khan on unpaid leave. SAP therefore is entitled to summary judgment at step one of the § 1102.6 framework.

### C.    Step Two of the § 1102.6 Framework

Having concluded that SAP is entitled to summary judgment at step one, the Court need not reach step two of the § 1102.6 framework. The Court nonetheless touches briefly on step two for the sake of completeness.

At step two, the employer has the burden of proof to demonstrate by clear and convincing evidence that it would have taken the alleged adverse action for legitimate, independent reasons even had the plaintiff not engaged in protected activity. *See Lawson*, 12 Cal. 5th at 718. SAP contends that the undisputed evidence shows that it would have placed Khan on unpaid leave even if he had not engaged in protected reporting about Shirole. As discussed above, SAP placed Khan on unpaid FMLA and personal leave at his own request, and extended that leave through Le's investigation. Khan has not presented any evidence from which a reasonable jury could conclude that SAP's actions were for other than legitimate reasons, independent of Khan's protected activity.

**D.     Conclusion**

Based on the foregoing, the Court concludes that SAP has met its initial burden on summary judgment to establish that no reasonable jury could find for Khan on his § 1102.5 claim, and that Khan has not met his burden on summary judgment to demonstrate the existence of disputed facts that would preclude summary judgment.

## IV.     ORDER

(1)     SAP's motion for summary judgment is granted.

(2)     This order terminates ECF 127.

(3)     A separate judgment will be entered simultaneously with this order.

Dated:  August 30, 2022

_____
BETH LABSON FREEMAN
United States District Judge